### THE GARDINER MANUFACTURING COMPANY *vs.* HEALD.

If a written instrument, purporting to be a deed of partition, is signed by the parties, but not sealed, yet it is not therefore to be treated as a nullity, so far as to admit parol testimony to contradict it.

*It seems* that a sale of standing trees by parol, though it might bind a subsequent purchaser of the land having notice of the sale, yet without such notice it cannot affect him.

One tenant in common may have *assumpsit* against his co-tenant, who has sold the common property, and received all the money.

If an execution be issued against an absent defendant, without the previous filing of a bond, pursuant to the statute, it cannot be avoided collaterally, but is good till superseded.

THIS was an action of *assumpsit,* for money had and received, and was tried before the Chief Justice upon the general issue.

It appeared that *Solomon Bangs, John P. Hunter,* and others, being tenants in common of a large tract of land, the plaintiffs attached *Bangs's* interest in the land, *Sept.* 21, 1824, recovered judgment

against him at *August* term, 1825, and extended their execution seasonably and regularly upon the debtor's undivided estate in the same land. In the winter following, the present defendant entered upon the premises, and cut and carried away a large quantity of pine timber, for the value of their proportion of which the plaintiffs brought this action.

The defendant offered in evidence a writing dated *Jan.* 31, 1824, purporting to be an agreement or deed of division, but not sealed; by which the tenants in common, who were all parties to the instrument, appeared to have assigned the lot numbered fifteen, to *Bangs*, who, by the same instrument, released to them the residue of the tract. The signature of *Bangs* was made by *David Smiley*, as his attorney; whose authority, however, was only by a writen memorandum not under seal.

The defendant also introduced *Hunter* as a witness, who testified that the tract was valuable principally for its timber ; that there had been a former division by parol of certain parts of the land, so far as respected the timber growing on it, which was taken off accordingly ; that the written agreement of *Jan.* 31, 1824, was the result of a treaty negotiated on several preceding days between the parties, and was intended to apply to the standing timber only, and not the land itself; that *Bangs*, pursuant to this agreement, had, during the same winter, taken the timber from the lot thus assigned to him ; that the plaintiffs had notice of this division of the timber soon after their attachment; that the defendant on the 20th of *Sept.* 1825, gave a written notification to the plaintiffs, stating that he was a tenant in common of the whole tract, from which he should cut timber, after forty days then next coming ; that he did thereupon cut the timber in question from the lot assigned to him ; and that *Bangs* had notice of the division thus made in his behalf, with which he appeared satisfied.

This testimony was objected to, but was admitted by the chief justice, for the purpose of reserving the whole case for the consideration of the court.

The sufficiency of the plaintiffs' extent was objected to, because it appeared from the record that though their action against *Bangs* was continued two terms on account of his absence from the State, into

Gardiner Manufacturing Company v. Heald.

which it did not appear that he had returned before judgment, yet no bond had been filed with the clerk, pursuant to the statute, previous to the issuing of the execution. This objection was overruled. A verdict was returned for the defendant; which was to be set aside, and judgment entered against him by default, if, in the opinion of the court, the evidence objected to was legally inadmissible, or, being admitted, constituted no bar to the action.

*Allen*, for the plaintiffs, contended—1. That the remedy was rightly conceived, the action being by one tenant in common against another, for his proportion of the purchase-money arising from the sales of the common property. *Brigham v. Eveleth* 9. *Mass.* 538. *Smith v. Barrow* 2. *D. & E.* 476. 3. *Pick.* 420. 1. *Chitty's Pl.* 26, 27. *Willes* 209. *Cowp.* 419. 8. *D. & E.* 146. 6. *D. & E.* 695.

2. That the instrument of *Jan.* 31, 1824, was inoperative, even as against *Bangs*. It had no effect as a division of the land, not being a deed, nor recorded. Nor had *Smiley* any authority to execute a deed for *Bangs;* nor has he attempted to act in the name of his principal. *Porter v. Hill* 9. *Mass.* 34. *Porter v. Perkins* 5. *Mass.* 233. *Perkins v. Pitts* 11. *Mass.* 125. *Stetson v. Patten* 2. *Greenl.* 358. *Milliken v. Coombs* 1. *Greenl.* 343. *Shep. Touchst.* 56.

3. The testimony of *Hunter* was inadmissible, there being no latent ambiguity in the instrument; and in this writing, such as it was, the whole previous parol treaty was merged. *Brigham v. Rogers* 17. *Mass.* 517. *King v. King* 7. *Mass.* 496. *Kilham v. Richards* 10. *Mass.* 239.

4. The rights of the plaintiffs relate to the moment of their attachment; previous to which they had no notice of any of the transactions proved. If the debtor had conveyed his estate by deed, it would not have bound the plaintiffs without registry, or previous notice; *a fortiori* they are not bound by a transaction *en pais*, relating to real estate, of which they had no knowledge whatever. So far as the agreement of the owners respected standing trees, it was void by the statute of frauds. *Crosby v. Wadsworth* 6. *East.* 601—3.

## Gardiner Manufacturing Company *v.* Heald.

*Boutelle*, for the defendant, argued—1. That the action, being for money had and received, was of the nature of a bill in equity; and that therefore the parol testimony was admissible, to reform the writing, and correct a plain mistake. 3. *Stark. Ev.* 1018—19. 1027. *note l.* 1. *Dane's Abr.* 248—9.

2. If not, and the writing is inoperative as a deed, though plainly intended for one, it is merely void, and a nullity; and so the parol testimony is to be received as the only evidence of the facts. 1. *Pick.* 415. *Johnson v. Johnson* 11. *Mass.* 359.

3. The parol agreement, though for the sale of growing trees, is not within the statute of frauds. 1. *Ld. Raym.* 182. 11. *East.* 362. *Warwick v. Bruce* 2. *M. & S.* 205. *Bostwick v. Leach* 3. *Day* 476. 2. *Johns.* 421. *note.* 2. *Stark. Ev.* 599. 1. *Dane's Abr.* 650.

4. And if it were, yet it is taken out by part execution. *Winter v. Brocknell* 8. *East.* 310. *Davenport v. Mason* 15. *Mass.* 85. 92. *Ricker v. Kelley* 1. *Greenl.* 117. 14. *Johns.* 15. *Tucker v. Bass* 5. *Mass.* 164.

WESTON J. delivered the opinion of the Court.

It has not been contended in argument, nor is it true in fact, that any legal partition of the land, from which the timber in question was cut, has been made; so as to convert the estate in common, which *Solomon Bangs* held, into an estate in severalty. The parties in interest could make such partition between themselves, only by deed. The instrument, which purports to be a partition, closes with the words " in witness whereof, we the said *Bangs &c.* have hereunto set our hands and seals"; but no seals were in fact affixed. And if there had been, *David Smiley*, who put the signature of *Bangs* thereto, as his attorney, was not authorized by deed so to do. When therefore the plaintiffs attached the interest of *Bangs* in the land, he held as tenant in common; and his estate duly passed, by the subsequent proceedings, to the plaintiffs.

The defendant insists that what he did was rightfully done, in pursuance of an agreement with *Bangs*, made prior to the attachment.

Gardiner Manufacturing Company *v.* Heald.

The agreement was committed to writing, and was signed by the parties assenting. There had been a previous negotiation and treaty in relation to the subject; but the written instrument is the evidence of what was concluded. The parol testimony objected to went to change that which the parties had set forth in writing. By the latter, the land was to be divided, and the timber, as a consequence of that division. By the former, the timber alone was to be divided, and the land to be left undivided.

In the *Countess of Rutland's case,* 5. *Co.* 26, it was resolved that "it would be inconvenient that matters in writing made by advice, and on consideration, and which finally import the certain truth of the agreement of the parties, should be controled by an averment of parties, to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers, and all others, in such cases, if such nude averment against matters in writing should be admitted." And there is no rule of evidence better established, than that parol testimony cannot be received to vary, alter or contradict that which is written. But it is contended, on the part of the counsel for the defendant, that as the written instrument cannot by law operate a partition of the land, as its terms import, it may be rejected as a nullity; and then the parol testimony might be admissible. The rule of law which gives a preference to written evidence, and excludes parol when it comes in competition, is designed to elicit and establish truth. Where the law does not require written evidence, a parol agreement may be enforced. But when agreements are committed to writing, that alone is evidence of what the parties have agreed. And if, through defect of form, or by reason of some positive provision of law, it cannot have the effect intended, it still remains the best evidence of the understanding of the parties. To suffer it to be controverted and changed by "slippery memory," would be an attempt to illustrate that which is more certain, by that which is less so; which is no less contrary to just principles of reasoning, than to law.

If there had been no written evidence in the case, and the parol agreement had been such as it appeared in testimony, it might have

49

Gardiner Manufacturing Company *v.* Heald.

amounted to a license to the defendant, or to a sale of the standing trees, for which it seems *Bangs* had an equivalent, which might perhaps have bound him, or those deriving title from him with notice. But it would be certainly opposed to the policy of the law in relation to real estate, to give effect to such a sale against a purchaser, or an attaching creditor, without notice. In the case before us, the land was valuable principally for its timber; and there is much land of this description in this State. The timber is attached to the realty. It is part of the inheritance. To cut or destroy it, except in a few specified instances, is waste on the part of the tenants for life or years, for which they are answerable to him who has the next estate of inheritance in remainder or reversion. What safety would there be in buying property of this description, if a party without notice might lose the principal value, and perhaps the sole object, of his purchase, if any one might strip the land with impunity, who could prove by parol that the vendor had previously sold the timber to him? It is not pretended that the plaintiffs had notice of any such agreement, prior to their attachment; and they are under no obligation to fulfil any parol contract of their debtor, whatever might be said of a written one, in relation to the timber.

By the notice given by the defendant to the plaintiffs, he is protected from being held answerable to them as a trespasser, for penal damages under the statute to prevent tenants in common and others from committing waste; but if the plaintiffs have been injured, they are not without remedy. If they had an interest in the trees as a part of the realty when attached to the land, when severed therefrom their interest did not cease. If one man enter upon the land of another, and there cut down his trees and sell them, the party injured may waive the trespass, ratify the sale, and maintain *assumpsit* against the wrong doer for the money. And we are satisfied from the authorities cited, that one tenant in common of personal property, as the timber in question was, after it was severed, may maintain *assumpsit* for his proportion against another, who has sold the common property, and received all the money.

In regard to the levy, we are of opinion that it must be deemed effectual in this action. A remedy for the irregularity stated, cannot

be applied in this collateral manner.   It must be obtained by *audita querela;* or by motion to the court, by whom the judgment was rendered, to set aside the execution.

*Verdict set aside and the defendant defaulted.*